# CIRCUIT COURT OF HENRICO COUNTY

Jesse Price Morgan

v.

Davis et al.

July 5, 1972

Case No. 637

By Judge E. Ballard Baker

The question is whether Jesse Price Morgan, an unemancipated infant son of Frances E. Withers, can maintain an action against his mother arising out of her operation of a motor vehicle on February 22, 1970. Is *Smith v. Kauffman*, 212 Va. 181 (1971), decided September 1, 1971, to be applied retroactively to this case?

In *Smith v. Kauffman*, the Supreme Court allowed an unemancipated minor child to sue the estate of her stepfather for personal injuries growing out of a motor vehicle accident. This decision overruled *Brumfield v. Brumfield*, 194 Va. 577 (1953), and *Norfolk Southern v. Gretakis*, 162 Va. 597 (1934). Prior to *Gretakis*, Virginia had no occasion to consider the question.

In *Worrell v. Worrell*, 174 Va. 11 (1939), the Court explained the reason for the rule of parental immunity it had adopted in *Gretakis*.

> The foundation for the rule applied in these cases is based upon the recognition of the right of parents to have the custody, control and direction of their infant children in maintaining authority over the family establishment and of a public policy to deny the exercise of any right that tends to disturb the peace and tranquility of the home or disrupt the voluntary and natural course of disposal of the parents' "exchequer."

174 Va. at 19.

*Worrell* did permit an unemancipated child to sue the father as operator of a passenger common carrier on which the child was riding, pointing out that liability insurance was required and that the action

was not against the father in the parental relation but against him in his vocational capacity as a common carrier.

*Smith v. Kauffman*, commented on these Virginia cases and made the following statement:

> Recognizing that today's changed circumstances vitiate the underlying reason for a rule of parental immunity in automobile accident litigation, we follow the precedent of *Worrell v. Worrell*. The plaintiff therefore can maintain this action.

212 Va. at 186.

In considering the question of retroactivity of a change in law, a number of factors are to be considered. In a lengthy annotation in 10 A.L.R. 3d 1371, the factors of reliance upon the old rule, the ability to effectuate the purpose of the new rule without retroactive operation, and the probable impact on the administration of justice are suggested as determinative of policy. In 51 Virginia Law Review 201, another lengthy article gives five criteria, stability, protection of reliance, efficiency in the administration of justice, equality, and the image of justice, to be considered.

The A.L.R. annotation does point out that it is still accepted as a general rule that unless there are special circumstances warranting the denial of retroactive application, it may properly be assumed that an overruling decision is entitled to retroactive as well as prospective effect. 10 A.L.R. 3d 1384. Furthermore, retroactive operation of an overruling decision is neither prohibited nor required as a matter of constitutional law, the determination in a particular case being one of policy.

The A.L.R. annotation does not cite any Virginia cases on retroactive or prospective application. In *Memorial Hospital v. Oakes, Adm.*, 200 Va. 878 (1959), the Court, in upholding the rule of immunity of charitable institutions, commented that the rule had been firmly established since 1921 and that its abandonment by judicial decision would be retroactive and give life to tort claims not barred by the statute of limitations. In *Smith v. Kauffman*, the question of retroactive application was raised in the briefs and was a major point in a petition to rehear. The Court, of course, made its decision retroactive as to the parties without further comment.

These cases do not shed much light on the policy position of the Supreme Court on this point. The comment in *Oakes* is dictum, and the

effect of the abrogation of the charitable immunity doctrine, with retroactive application, would be quite different in many ways from similar treatment of the parental immunity doctrine.

Retroactive application of the change to the parties in *Smith v. Kauffman* does not necessarily mean to everybody. There are many instances where only the parties to the new case get the benefit. 10 A.L.R. 3d 1399. The party who convinces the Court to change the rule is rewarded for his effort and expense in challenging the old.

It is noted that neither in the majority opinion or the two dissents on the parental immunity portion of *Smith v. Kauffman* is there any hint as to the Supreme Court's position on retroactive or prospective application, beyond the holding itself, unless Justice Harman's reference to the decision having the effect, "of rewriting existing insurance contracts to extend coverage . . ." is to be so considered.

Other courts have faced the problem. 10 A.L.R. 3d 1428. It appears that Wisconsin, *Goller v. White*, 122 N.W.2d 193, New Hampshire, *Vickers v. Vickers*, 242 A.2d 57, New Jersey, *Schwartz v. U.S. Rubber*, 286 A.2d 724, and Minnesota, *Silesky v. Kelman*, 161 N.W.2d 631, have decided to apply the new rule allowing the child to sue the parent prospectively. New York, in *Gelbman v. Gelbman*, 245 N.W.2d 192, applied the new rule retroactively.

Wisconsin, in *Goller v. White*, and Minnesota, in *Silesky v. Kelman*, changed the rule and announced it prospective, except as to the parties, in one case. New Jersey did away with the immunity doctrine in *France v. A.P.A. Transport*, 267 A.2d 490, on July 10, 1970, and advised that it was prospective in *Schwartz v. U.S. Rubber*, on January 7, 1971. The accident giving rise to *Schwartz* occurred on April 1, 1967, before the October 16, 1967, accident which led to *France*. In New Hampshire, the rule was abrogated in *Briere v. Briere*, 224 A.2d 588, on November 30, 1966, and held to be prospective in *Vickers v. Vickers*, decided on May 29, 1968. The accident in *Briers* was on November 4, 1965, and that in *Vickers* was on December 27, 1964. All of these cases, except *Schwartz v. U.S. Rubber*, were cited either in the briefs or the Petition to Rehear in *Smith v. Kauffman*.

Virginia did not follow the Wisconsin and Minnesota procedure of doing away with the immunity doctrine and announcing its prospective application.

Unlimited retroactivity of the new rule would open to possible litigation cases originating prior to 1953 when *Brumfield* was decided. It

would give new rights in old cases in situations where the Court has previously stated a public policy to deny the exercise of any right that tends to disturb the peace of the home. The question of whether a past accident should be made the basis for a present law suit against the parent would raise some difficult questions, and certainly disturb the parent-child relationship in many instances. When the basis for the parental immunity rule is considered, along with the factor of reliance upon past decisions, it appears that this new rule should not be given unlimited retroactivity.

The fact that there are valid reasons of policy for not opening the courts to the trial of accidents which occurred 5, 10, 15 or more years ago is not a satisfactory reason for keeping the doors closed on more recent events where those reasons might not be applicable. The parental immunity rule was not based on any absence of a cause of action in the child against the parent, and its abrogation merely gives to the child a right to sue on that cause of action.

Children have usually received special treatment and consideration by the courts. The immunity rule was an exception. It seems inconsistent to this concern that an arbitrary rule should be laid down denying to a child the right to maintain a lawsuit based upon a cause of action solely because the procedural right was given after his cause of action occurred.

As stated in *Gelbman v. Gelbman*:

> By abolishing the defense of intrafamily tort immunity for nonwilful torts, we are not creating liability where none previously existed. Rather, we are allowing recovery, previously denied, after the liability has been established. We, therefore, conclude that the present decision should be applied retrospectively to matters which have not gone to final judgment.

The present case differs from *Schwartz v. U.S. Rubber* and *Vickers v. Vickers*, where the new rule, announced in an earlier case, was held to be prospective. In each of those cases, the accident occurred prior to the accident in the earlier case; though absolutely no significance is attached to that fact in the opinions. Here, the accident was on February 22, 1970, while the record in *Smith v. Kauffman* shows the accident to have been on August 18, 1968.

In the present case, the testimony heard on the Special Plea was that the mother's insurer was aware of an injury to the child and obtained

certain bills and medical reports because of the medical payments provision of the policy. A statement was taken from the mother, and a suit against the mother by a third party was commenced and settled. The insurer did not obtain details of the child's injury or investigate the case to the same extent it would have had it been aware that the child could sue the mother. It also appears, of course, that nothing was put in the premium to cover the risk of liability to the child. A letter from E. J. Michael, of the Virginia Bureau of Insurance, introduced as defendant Exhibit 1 at the hearing and dealing with insurance rate-making procedure, did point out that if insurers have to make payments for injuries in the past to children from negligence of parents, consideration "would be given to such payments *only* to the extent they might fall within experience periods utilized in the rate-making procedure to establish rates for the *future* . . . ." While this does not pay for losses in the past, present and future rates would be influenced by such payments.

The case comes down to the point of whether an infant, who has a cause of action on February 22, 1970, but was disabled to sue because of earlier decisions which were overturned on September 1, 1971, in a case arising prior to his accident, is to be allowed to sue. The Supreme Court, in *Smith v. Kauffman*, did not preclude the bringing of this action. The general historical rule gives retroactivity to an overturning decision. Bearing those two points in mind, along with the special concern given to infants by the courts and weighing the reasons for giving the child the right to sue in this case against the reasons for denying that right, I find that there is no valid reason why Jesse Price Morgan cannot maintain this suit against Frances E. Withers, his mother.

Upon submission of a proposed order overruling the Special Plea, it will be entered.